**Kevin Winston OSBORN, Petitioner,**

**v.**

**Duane SHILLINGER and the Attorney General of the State of Wyoming, Respondents.**

**No. 92–CV–0141–B.**

United States District Court, D. Wyoming.

Sept. 16, 1992.

Kevin Winston Osborn, pro se.

Paul S. Rehurek, Sr. Asst. Atty. Gen., State of Wyo., Cheyenne, Wyo., for respondents.

## ORDER GRANTING STATE OF WYOMING'S MOTION FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This matter comes before the Court on Respondents' motion for summary judgment. The Court, having considered the materials in support of and in opposition to the motion, having weighed the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background

On May 21, 1982, Kevin Winston Osborn was charged in Uinta County, Wyoming with conspiracy, aggravated robbery, and attempted second degree murder in connection with the beating and robbery of Jimmy Ray O'Briant. On August 17, 1982, an amended complaint was filed in Uinta County charging Osborn with first degree murder after O'Briant died from being beaten by Osborn.

On June 27, 1982, Osborn was charged by Information in Sweetwater County with the crimes of aiding and abetting murder in the first degree of Audrey Ditmars, attempted first degree murder of her son, Dale Moore, and aggravated robbery of Dale Moore.

After the Uinta and Sweetwater cases were consolidated, Osborn pleaded guilty to all charges against him. In the Sweetwater County case, the State district court sentenced Osborn to life imprisonment for aiding and abetting the first degree murder of Audrey Ditmars, life imprisonment for the attempted murder of Dale Moore, and 45 to 50 years for aggravated robbery, to be served consecutively. For crimes committed in Uinta County, Osborn was sentenced to two concurrent terms of 45 to 50 years for conspiracy and aggravated robbery. However, Osborn was sentenced to death for the murder of Jimmy Ray O'Briant.

Osborn appealed to the Wyoming Supreme Court and his sentences were affirmed in all respects. *Osborn v. State*, 672 P.2d 777 (Wyo.1983), *cert. denied* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984). Subsequently, in the Uinta County case, various counsel acting on Osborn's behalf filed motions and petitions urging the Wyoming Supreme Court to stay and reconsider Osborn's execution. All motions and petitions were denied.

On September 24, 1985, three days before his scheduled execution, Osborn filed a petition for Writ of Habeas Corpus in the United States District Court, District of Wyoming, where he requested relief from his death sentence only. The District Court found that prior proceedings against Osborn had violated his sixth amendment right to effective assistance of counsel. The District Court ordered that the case be remanded for proceedings elsewhere than in Uinta or Sweetwater Counties where Osborn could withdraw his pleas and request for the death penalty. The District Court's decision was affirmed on appeal. *See Osborn v. Shillinger*, 861 F.2d 612 (10th Cir.1988).

Osborn was re-arraigned on the Uinta County charges in Converse County District Court, and entered guilty pleas anew to each charge. On February 24th, 1989, Osborn was sentenced to between 45—50 years for conspiracy to commit aggravated robbery, between 45—50 years for aggravated robbery, and life imprisonment for first degree murder. The court ordered that these sentences be served concurrently with one another and concurrently with the then existing Sweetwater sentences.

In March of 1989, Osborn filed a Petition for Habeas Corpus in the United States District Court, District of Wyoming, challenging the Sweetwater convictions on essentially the same basis as the Uinta County charges. The federal District Court found no distinction between the cases in the two counties and ordered that the

Sweetwater County case be likewise remanded for withdrawal of the pleas and subsequent proceedings.

Osborn was re-charged in Converse County on an Information identical to the charges originally set forth in Sweetwater County. In February of 1990, unlike the original charges in Sweetwater, the State filed notice of its intent to seek the death penalty against Osborn. *Compare Osborn v. Shillinger*, 639 F.Supp. 610, 616 (1986). Sometime during the pre-trial process, the prosecutor agreed to drop the death penalty in exchange for Osborn's plea of guilty.

In early June of 1990, Osborn officially voiced complaints that he was dissatisfied with counsel. Osborn complained that, during a portion of voir dire, members of the prospective panel were interviewed in chambers outside Osborn's presence; that Osborn wanted certain witnesses called to testify regarding Terry Green's role as leader in the conspiracy; and, that the State had a key witness sit at its table when all witnesses were to be sequestered during trial. Osborn filed a motion for new counsel with the Converse County trial court which was denied.

On June 13th, 1990, Osborn was re-convicted, receiving life imprisonment for murder in the first degree, life imprisonment for attempted first degree murder, and 22—25 years for aggravated burglary, all sentences to be served consecutively to any other sentence and consecutive to each other.

Osborn then filed a Petition for Writ of Habeas Corpus with this Court based on the above-mentioned events. Osborn's complaints are twofold: (1) the Converse County State court committed reversible error by accepting Osborn's guilty plea because Osborn was coerced into making a plea which violated his rights under the Double Jeopardy clause of the 5th Amendment, made applicable to the states through the Fourteenth Amendment; and, (2) the sentence imposed upon him by the Converse County State trial court was "a vindictive sentence" and, as such, violated Osborn's Due Process right.

In response, Government has motioned for summary judgment on both issues.

*Standard for Summary Judgment*

The standard for issuing a summary judgment was stated recently by the Tenth Circuit:

In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265] (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323 [106 S.Ct. at 2552].

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex* at 322 [106 S.Ct. at 2552]; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]. The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251 [106 S.Ct. at 2511].

*Manders v. Okl. ex rel. Dept. of Mental Health*, 875 F.2d 263, 265 (10th Cir.1989).

*Discussion*

This Court finds as follows:

A. Guilty Pleas.

Osborn asserts that, when he was reconvicted in Converse County ("Converse County–Sweetwater"), his guilty pleas were coerced for two reasons: (1) his plea was coerced by an unconstitutionally imposed death penalty, and (2) the Converse County State court committed several unconstitutional errors preceding the entry of his plea which further coerced Osborn to plead guilty.

1. Whether Guilty Pleas Were Coerced

Osborn argues that his plea was coerced because the prosecutor sought the death penalty during the Converse County–Sweetwater proceedings; whereas, in the original proceedings, the prosecutor had not sought the death penalty. The threat of this subsequent death penalty unconstitutionally coerced Osborn into pleading guilty. The issues presented by Osborn's coercion argument may be further divided into two parts: (a) whether a defendant's guilty plea is "coerced" when the defendant accepts a plea bargain to avoid the death penalty, (b) whether the death penalty sought by the prosecution in the subsequent Converse County–Sweetwater proceedings was inherently unconstitutional.

a. Whether Defendant's Pleas Were "Coerced" Where Defendant Accepted a Plea Bargain to Avoid the Death Penalty.

■■■ A guilty plea must be "knowing and voluntary" to satisfy the constitutional strictures of due process. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). A guilty plea may not be coerced or obtained as a result of threat or intimidation. *See e.g., Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Wellnitz v. Page*, 420 F.2d 935 (10th Cir.1970). A plea is generally considered voluntary if it is the product of a reasoned decision under the guiding hand of counsel. *Brady v. United States*, 397 U.S. 742, 748–50, 90 S.Ct. 1463, 1468–70, 25 L.Ed.2d 747, 397 U.S. at 804, 90 S.Ct. at 1477 (1970) (Brennan, J., concurring). A court decides whether a plea was voluntary by examining all the facts and circumstances surrounding the plea. *Brady* at 749, 90 S.Ct. at 1469.

Osborn does not contend that the state court failed to inform him that he was waiving critical constitutional rights when he pleaded guilty. *Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969). Instead, Osborn argues that he was forced to plead guilty because the possibility existed that he would suffer the death penalty if tried and convicted.

Osborn's argument misconstrues what meaning the Supreme Court has given the terms "knowing and voluntary" for purposes of plea bargaining. In *Brady v. United States*, the court stated that a "knowing and voluntary" plea is one where, with the help of counsel, defendant weighs the advantages and disadvantages of the difficult choices before him. *Brady*, 397 U.S. at 750, 90 S.Ct. at 1470. The terms "knowing and voluntary" do not mean that a defendant chooses from a cafeteria of options, completely free from all influence and pressure. In what is known as the *Brady* trilogy,[1] the Supreme Court stated that an intelligent and voluntary guilty plea barred defendant from later asserting that the only reason he pled guilty was because he feared a greater punishment if he did otherwise. *See e.g., Tollet v. Henderson*, 411 U.S. 258, 270, 93 S.Ct. 1602, 1609, 36 L.Ed.2d 235 (1973) (Marshall, J. dissenting). In essence, *Brady* and progeny stand for the proposition that a "knowing and voluntary" guilty plea is one that is at least objectively rational under the circumstances. Based on the record, this Court concludes that Osborn's plea was quite rational and was therefore not coerced under the case law.

---

1. *Brady v. United States*, 397 U.S. 742, 750, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970); and *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

Osborn cites *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) for the proposition that counselled guilty pleas do not inevitably waive all antecedent constitutional violations. 423 U.S. at 62 n. 2, 96 S.Ct. at 244 n. 2. The Court in *Menna* explained that

> [T]he point of [Brady and progeny] is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt, and which do not stand in the way of conviction, if factual guilt is validly established.

*Id.* The *Menna* Court went on to state that a conviction entered pursuant to a counseled plea of guilty may be set aside where "the State is precluded by the Constitution from haling a defendant into court on a charge" (e.g., double jeopardy). *Menna*, 423 U.S. at 62, 96 S.Ct. at 242. While the Supreme Court has yet to explain all the circumstances under which a conviction entered pursuant to a counseled guilty plea may be set aside, this much is clear: the "antecedent constitutional violations" to which the Supreme Court refers in *Menna* do not include a defendant's guilty plea entered to avoid a possible death penalty.

b. Whether the death penalty sought in the Converse County–Sweetwater proceedings was inherently unconstitutional.

■ Osborn alleges that the prosecutor in the later proceedings was barred from seeking the death penalty because that action violated the double jeopardy clause of the constitution. Osborn contends that he was effectively acquitted of the death penalty when the prosecutor in the original Sweetwater County case chose not to pursue the penalty. Thus, the question before this Court is whether the mere fact that the prosecutor in the original proceedings chose not to seek the death penalty constitutes an "acquittal" for double jeopardy purposes.

To support his claim, Osborn relies on the cases of *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), and *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). In *Bullington*, the Supreme Court held that the double jeopardy clause prohibits the State from subjecting a defendant who received a life sentence in his first sentencing proceeding to the possibility of a death sentence on retrial after reversal of his conviction or sentence. The court so held because the sentencing proceeding at issue was, in all respects, like a trial. *Bullington*, 451 U.S. at 438, 101 S.Ct. at 1857.

In *Rumsey*, the Supreme Court reaffirmed *Bullington*, finding that "an acquittal on the merits by the sole decision maker in the [sentencing] proceeding is final and bars retrial on the same charge." *Rumsey*, 467 U.S. at 211, 104 S.Ct. at 2310. Together, the two cases state that "the proper inquiry [for the court] is whether the sentencer or reviewing court has decided that the prosecution has not proved its case *that the death penalty is appropriate.*" *See Poland v. Arizona*, 476 U.S. 147, 155, 106 S.Ct. 1749, 1755, 90 L.Ed.2d 123 (1986) (emphasis in original).

In the instant case, Osborn was not "acquitted" of the death penalty at the original Sweetwater proceedings. The State did not present evidence in support of the death penalty nor did it allege aggravating circumstances. The sentencing judge made no findings, express or implied, on the special issues that had to be answered in deciding between death and life. More importantly, the prosecutor's earlier decision not to seek the death penalty did not reflect his conclusion that there was insufficient evidence to justify the death penalty. *See Sorola v. Texas*, 769 S.W.2d 920 (Tex.Ct.App.), *cert. denied* 493 U.S. 1005, 110 S.Ct. 569, 107 L.Ed.2d 563 (1989) (Brennan, J., dissenting). Thus, this Court concludes that the earlier Sweetwater proceedings were not sufficiently "trial-like" and, therefore, it was constitutional under the double jeopardy clause for the State to

pursue the death penalty in the Converse County–Sweetwater proceedings.

### 2. Alleged Errors Preceding Entry of Plea

■ Osborn alleges that errors by the Converse County–Sweetwater court and other events that occurred prior to entry of his guilty plea further coerced his plea. Osborn contends that he disagreed with his counsel regarding several aspects of his case; and, that certain procedural matters violated his constitutional rights, to-wit: that the State court improperly denied a motion to strike the death penalty; that the State court failed to take up interlocutory appeal; that there was an allegedly biased jury member; and, that presence of a key witness at prosecutor's table was unconstitutional.

Presumably, Osborn argues that these factors also amount to unconstitutional coercion in addition to the fact that the prosecutor at the Converse County–Sweetwater proceedings sought the death penalty. This Court holds that, under the circumstances, these additional factors do not alter the conclusion that Osborn pled guilty in a knowing and voluntary fashion. *See Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).

### B. Whether Sentences Imposed Were Vindictive and Therefore Violated Due Process

■ Osborn argues that the new Converse County–Sweetwater sentences violated his right to Due Process because the court acted vindictively when imposing the new, harsher sentences. Osborn contends these sentences raise a presumption of vindictiveness because they are now to be served *consecutively* to the Converse County–Uinta County sentences; whereas, previously, the sentences were to be served *concurrently*.

In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held that due process of

law does not permit a sentencing authority to mete out higher sentences on reconviction to punish those defendants who successfully exercise their right to appeal, or who collaterally attack their convictions. *Pearce's* progeny made clear that the due process clause is not offended by all possibilities of increased punishment upon retrial after a successful appeal, but only by those that pose a "realistic likelihood of vindictiveness." *See Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974).[2]

For example, in *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), defendant was found guilty of a misdemeanor in an inferior court, and then was allowed to try his case again *de novo* in a second, higher court. The Supreme Court held that no presumption arose when the second court decided defendant deserved a harsher sentence. *Colten* at 115, 92 S.Ct. at 1959. In *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), a second jury retried defendant following defendant's successful appeal, and imposed a higher sentence than the prior jury. The Supreme Court held the second jury was unlikely to have "a personal stake" in the prior conviction, or to be "sensitive to the institutional interests that might occasion higher sentences." *Chaffin* at 27, 93 S.Ct. at 1983.

Twenty years after *Pearce*, in *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Supreme Court continued to narrow the cases in which the *Pearce* presumption applied. In *Smith*, the court explicitly held that the *Pearce* presumption of vindictiveness was limited to circumstances in which there was a "reasonable likelihood" that an unexplained increase in a sentence was the product of actual vindictiveness on the part of the sentencing authority. Where there was no such likelihood, the defendant retained the burden of proving actual vindictiveness

---

**2.** The Court stated that this conclusion of law emerged from the subsequent cases of *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), and *Pearce, supra* analyzed *infra*.

without the aid of the presumption. *Smith* at 799, 109 S.Ct. at 2204;[3] *see also, Wasman v. United States,* 468 U.S. 559, 569, 104 S.Ct. 3217, 3223, 82 L.Ed.2d 424 (1984).

A careful reading of the Converse County–Sweetwater record reveals no evidence of vindictiveness on the part of the sentencing authority. Judge William Taylor, the re-sentencing authority at the proceedings, was not the original sentencing judge. Judge Taylor accepted a plea agreement from Osborn in the retrial of both the Uinta and Sweetwater County cases which eliminated the possibility of the death penalty. Furthermore, the prosecutor in the Converse County–Sweetwater proceedings was not the original prosecutor. As a result, Osborn is not entitled to the *Pearce* presumption of vindictiveness because mere inference of vindictiveness, based on the record, is insufficient to raise the presumption. *See e.g., Alabama v. Smith,* 490 U.S. 794, 799, 109 S.Ct. 2201, 2204, 104 L.Ed.2d 865 (1989). Osborn, therefore, fails to carry his burden of proof regarding vindictiveness.

THEREFORE IT IS

ORDERED that Respondents' motion for summary judgment be, and the same hereby is, GRANTED;

ORDERED that Petitioner's motion for an evidentiary hearing on these matters, and the same hereby is, DENIED.

---

**3.** Before *Alabama v. Smith,* in cases dealing with pretrial prosecutorial decisions to modify the charges against a defendant, the Supreme Court held that "a mere opportunity for vindic- tiveness is insufficient to justify the imposition [of the presumption]." *United States v. Goodwin,* 457 U.S. 368, 384, 102 S.Ct. 2485, 2494, 73 L.Ed.2d 74 (1982).