Kevin Winston OSBORN,
Petitioner–Appellant,

v.

Duane SHILLINGER, and Attorney General of the State of Wyoming,
Respondents–Appellees.

No. 92–8059.

United States Court of Appeals,
Tenth Circuit.

July 8, 1993.

Kevin Winston Osborn, pro se.

Paul S. Rehurek, Sr. Asst. Atty. Gen., Cheyenne, WY, for respondents-appellees.

Before BALDOCK and KELLY, Circuit Judges, and BENSON,* District Judge.**

---

\* Honorable Dee V. Benson, District Judge, United States District Court for the District of Utah, sitting by designation.

\*\* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a);

BALDOCK, Circuit Judge.

Petitioner Kevin Winston Osborn appeals from the district court's dismissal of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. On this appeal, Osborn claims that the district court erred in dismissing his claims (1) that his guilty plea to murder and other charges was coerced and (2) that the sentences imposed were vindictive and therefore violated due process. We affirm.

The factual background and history of extensive criminal and habeas proceedings involving this case are contained in the district court's opinion and in the Wyoming Supreme Court's opinion affirming Osborn's most recent conviction. *See Osborn v. Shillinger,* 803 F.Supp. 371, 372–73 (D.Wyo.1992); *Osborn v. State,* 806 P.2d 259, 260–62 (Wyo. 1991). For the present case, we need only briefly sketch the background of Osborn's claims. At his initial, consolidated criminal proceeding in 1982, Osborn pleaded guilty to murder and attempted murder and related charges arising out of an incident in Sweetwater County and then pleaded guilty to murder and related charges arising out of an incident in Uinta County. Osborn was sentenced to two life sentences plus forty-five to fifty years consecutively for the Sweetwater County crimes. His conviction of the Sweetwater murder was used as an aggravating circumstance in the sentencing hearing for the Uinta murder, and Osborn was sentenced to death for the Uinta murder and to two concurrent sentences of forty-five to fifty years for the related crimes in Uinta County, and this sentence was to run consecutive to the Sweetwater sentence. Thus, in total Osborn received a death sentence plus two life sentences and ninety to one hundred years, all to run consecutively.

Osborn sought habeas relief for his Uinta death sentence, and this court affirmed the district court's grant of relief on the basis of ineffective assistance of counsel at the trial and sentencing hearing. *Osborn v. Shillinger,* 861 F.2d 612, 626–30 (10th Cir.1988). Upon retrial for the Uinta murder, Osborn again pleaded guilty. This time he received a life sentence for the murder as well as two forty-five to fifty-year sentences, all of which was concurrent to the existing Sweetwater sentences.

Osborn then sought and obtained habeas relief for the Sweetwater convictions on the same basis as for his original Uinta convictions, and he again stood for retrial. Though the state originally sought only a life sentence for the Sweetwater murder, on retrial the state sought the death penalty, relying in part on the Uinta murder as an aggravating circumstance. After two days of trial, Osborn again pleaded guilty to the Sweetwater charges in return for the state not seeking the death penalty. He was again given two life sentences and a sentence of twenty-two to twenty-five years, and these sentences were to be served consecutive to each other and consecutive to the Uinta sentences.

Osborn first claims that his guilty plea was coerced rather than voluntary. His primary argument is that he pleaded guilty only to avoid the death penalty and that the state's seeking the death penalty was unconstitutional on double jeopardy grounds because he had been "acquitted" of the death penalty in the original Sweetwater proceeding since the state had not sought the death penalty during that proceeding. Appellant's Br. at 21. To a lesser extent, he also claims that a number of errors by the court and his counsel prior to his plea also coerced him into making the plea: the court excluded him from voir dire of several jurors; the court seated a juror who was allegedly prejudiced against him; the court ordered all witnesses excluded from the courtroom during trial but allowed a prosecution witness to sit at the prosecutor's table; his attorney failed to appeal the court's interlocutory ruling allowing the state to seek the death penalty; and his attorney failed to subpoena certain witnesses. *Id.* at 11–16. Osborn's second claim is that the court acted vindictively when it imposed harsher sentences at his second Sweetwater hearing (because his second Sweetwater sentences were consecutive rather than concurrent to the second Uinta sentences) and that this violated his due process rights. *Id.* at 27–31.

10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

In dismissing Osborn's petition, the district court concluded that Osborn's guilty plea was not coerced. It found that the state's decision not to seek the death penalty at the original proceeding did not constitute an "acquittal" of the death penalty and that the state was not barred from seeking the death penalty on retrial. *Osborn v. Shillinger*, 803 F.Supp. at 375–76. Relying primarily on *Brady v. United States*, 397 U.S. 742, 749–50, 90 S.Ct. 1463, 1469–70, 25 L.Ed.2d 747 (1970), the district court found that neither the fact that Osborn pleaded guilty to avoid the death penalty nor the alleged court and counsel errors prior to his plea made his plea involuntary. *Osborn v. Shillinger*, 803 F.Supp. at 374–76. The court also determined that there was no evidence of vindictiveness on the part of the sentencing authority, and thus he was not entitled to a presumption of vindictiveness, and that Osborn had not carried his burden of proving vindictiveness. *Id.* at 377. The court therefore dismissed the petition.

We first address Osborn's coercion claim. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)); *see also McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). A valid guilty plea may not be obtained through coercion. *See, e.g., Brady*, 397 U.S. at 750, 90 S.Ct. at 1470; *Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Whether a guilty plea is knowing and voluntary under the constitution is a question of federal law. *Marshall v. Lonberger*, 459 U.S. 422, 431, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983). "The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749, 90 S.Ct. at 1469.

Generally, a collateral attack on a conviction resulting from a guilty plea is "confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989). Thus, a guilty plea bars subsequent challenges based on nonjurisdictional, pre-plea errors. *See, e.g., Menna v. New York*, 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975); *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). The district court's alleged errors in excluding him from jury voir dire, seating an allegedly biased juror, and allowing a prosecution witness in the courtroom when not testifying are such pre-plea errors that Osborn cannot collaterally attack. Moreover, we agree with the district court that these alleged errors do not make Osborn's guilty plea involuntary. Had Osborn believed these alleged errors were so prejudicial as to deny him a fair trial, he should have challenged them directly in the trial court, on appeal, or in a collateral attack rather than pleading guilty. *See Broce*, 488 U.S. at 571, 109 S.Ct. at 763; *McMann v. Richardson*, 397 U.S. 759, 768, 90 S.Ct. 1441, 1447, 25 L.Ed.2d 763 (1970).

Osborn's claim that the state's seeking the death penalty was unconstitutional because he had already been acquitted of the death penalty amounts to a double jeopardy challenge to the trial court's power to hale him into court; it thus can be raised collaterally notwithstanding his guilty plea. *See Broce*, 488 U.S. at 574–75, 109 S.Ct. at 765; *Menna*, 423 U.S. at 62, 96 S.Ct. at 242. We agree with the district court that this claim fails on the merits because Osborn had not been "acquitted" of the death penalty at his earlier proceeding. Whether the earlier proceeding acquitted Osborn turns on "whether the sentencer or reviewing court has decided that the prosecution has not proved its case that the death penalty is appropriate." *Poland v. Arizona*, 476 U.S. 147, 155, 106 S.Ct. 1749, 1755, 90 L.Ed.2d 123 (1986) (quotation and emphasis omitted); *see*

*also United States v. Wood,* 958 F.2d 963, 972 (10th Cir.1992) (no acquittal where issue not resolved in defendant's favor). The state did not present evidence in support of the death penalty, and the trial court did not make any findings on the issues to be resolved in deciding between life and death. Thus, there was no determination that the death penalty was inappropriate, and the state's subsequently seeking the death penalty did not place Osborn in double jeopardy.

 Osborn also alleges that the ineffectiveness of his counsel coerced him to plead guilty.[1] The two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), determines whether a defendant's counsel was ineffective. To prevail on an ineffectiveness claim, a defendant must show both that his counsel's performance was substandard and that he was prejudiced by that substandard performance. *Id.* at 688, 694, 104 S.Ct. at 2064, 2068; *United States v. Walling,* 982 F.2d 447, 449 (10th Cir.1992).

 Osborn's first allegation of ineffectiveness is that his counsel should have appealed the court's interlocutory ruling that allowed the state to pursue the death penalty. As discussed above, the state was not constitutionally barred from seeking the death penalty. Thus, Osborn cannot show prejudice from his counsel's failure to appeal the trial court's interlocutory ruling, and this ineffectiveness claim fails. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069 (regardless of counsel performance, failure to show prejudice defeats ineffectiveness claim).

 Osborn's other claim of counsel ineffectiveness is his counsel's failure to subpoena certain witnesses whom he asserts would have testified that he was not the "ringleader" in the crime spree that led to the Uinta and Sweetwater charges. As Osborn correctly points out, his counsel's failure at his original sentencing hearing for the Uinta murder to counter the state's ringleader the-

ory contributed to this court's conclusion that his original counsel was ineffective. *Osborn v. Shillinger,* 861 F.2d at 630. This time, however, Osborn again fails to show prejudice. Osborn does not argue that rebuttal of the ringleader theory would have proved he was not guilty of the crimes with which he was charged. The ringleader evidence appears to be relevant only to sentencing rather than to guilt. *See id.* at 628 (ringleader evidence was "key factor that convinced the sentencing judge to impose the death sentence"); *Osborn v. State,* 806 P.2d at 263, 270 (ringleader evidence only relevant to sentencing). Once he pleaded guilty to and was convicted of murder, the only sentencing alternatives were the death penalty or life imprisonment. Wyo.Stat. § 6–2–101(b). Because Osborn received the most lenient sentence possible, he was not prejudiced by his counsel's alleged ineffectiveness.

 Finally, the fact that Osborn pleaded guilty to avoid the death penalty, even if its imposition would have been unconstitutional, does not make his plea coerced or involuntary. In *Brady,* the petitioner challenged his conviction based on a guilty plea made to avoid a possible death penalty. 397 U.S. at 749, 90 S.Ct. at 1469. The death penalty provision of the statute under which the petitioner was convicted was later declared to be unconstitutional, and the petitioner claimed that the possibility of the unconstitutional death penalty made his guilty plea involuntary. The Court rejected this claim, finding nothing inherently coercive in the criminal justice system's common practice of offering leniency in return for guilty pleas. *Id.* at 750–55, 90 S.Ct. at 1470–72. We thus agree with the district court that Osborn's guilty plea was voluntary and not coerced.

 Osborn's second claim is that the sentencing judge, in resentencing him for the Sweetwater County crimes, acted vindictively by running the sentences for these crimes consecutive to the sentences for his Uinta

---

1. Though Osborn does not directly state a claim of ineffective counsel (which he apparently did on his direct appeal, *see Osborn v. State,* 806 P.2d at 268–70), we must construe his claims liberally because he appears pro se. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). On that basis, we will address his contentions of counsel failure as ineffective assistance of counsel claims. *See Tollett,* 411 U.S. at 267, 93 S.Ct. at 1608 (voluntariness of guilty plea may be attacked through claim of ineffective counsel).

County crimes. Prior to his second habeas corpus petition which challenged his convictions on the Sweetwater crimes, Osborn's total sentence on both the Sweetwater and Uinta crimes was two consecutive life terms plus a consecutive forty-five to fifty year term (Sweetwater original sentence) and a concurrent life term and two concurrent forty-five to fifty year terms (Uinta resentence). After Osborn was granted habeas relief on his second petition and resentenced on the Sweetwater crimes, his total sentence was three consecutive life terms plus a consecutive term of twenty-two to twenty-five years and two terms of forty-five to fifty years to run concurrent to one of the life sentences and consecutive to the remainder of his sentence. Osborn claims that this increase in his total sentence violated his due process rights. *See North Carolina v. Pearce*, 395 U.S. 711, 725–26, 89 S.Ct. 2072, 2080–81, 23 L.Ed.2d 656 (1969).

Under *Pearce*, a defendant cannot be vindictively sentenced for successfully attacking his first conviction. 395 U.S. at 725, 89 S.Ct. at 2080. Unless reasons for a more severe sentence affirmatively appear in the record, a presumption of vindictiveness arises that must be rebutted by objective information justifying the increased sentence. *Texas v. McCullough*, 475 U.S. 134, 142, 106 S.Ct. 976, 981, 89 L.Ed.2d 104 (1986). Over the years, the Supreme Court has limited the application of this rule to situations "in which there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Alabama v. Smith*, 490 U.S. 794, 799–800, 109 S.Ct. 2201, 2205, 104 L.Ed.2d 865 (1989) (citation and quotation omitted).

In *Alabama v. Smith*, the Court found the presumption not justified where the original sentence came after a guilty plea and the later, increased sentence followed a trial. *Id.* at 801, 109 S.Ct. at 2206. The Court stated that the information available to the judge after a trial concerning the nature and extent of the crimes and the defendant's conduct to be considerably greater than that available

after a guilty plea. *Id.* Therefore, "the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge." *Id.*

We believe that this case is similar to *Alabama v. Smith* and that there is no reason to apply the presumption. Osborn pleaded guilty after two days of trial. During that time, the sentencing judge heard the testimony of several state witnesses, including its central witness, Dale Moore. Osborn eventually pleaded guilty to attempted murder of Moore and the murder of Moore's mother. During his testimony, Moore vividly described his encounter with Osborn and his colleagues. In addition, the judge also had the opportunity to see and assess Osborn during his colloquies with the court. The judge therefore had more information on which to base his Sweetwater sentence than he had when he sentenced Osborn after his guilty plea at Osborn's second Uinta proceeding. Thus, we do not believe that it is more likely than not that the increase in Osborn's sentence is attributable to vindictiveness on the part of the sentencing judge. Because Osborn presented no evidence of actual vindictiveness, he failed to meet his burden on his vindictiveness claim.

Osborn has also filed motions for leave to enlarge the record and for leave to supplement the exhibits. Through his first motion, Osborn wants to supplement the record with documents concerning his original convictions that would allegedly show that the state had the opportunity but failed to pursue the death penalty for the Sweetwater murder. In light of our rejection of Osborn's double jeopardy claim, this information is irrelevant and we deny this motion. In his second motion, Osborn wants to supplement the exhibits attached to his first motion with a copy of the recent Wyoming Supreme Court decision *Cook v. State*, 841 P.2d 1345 (Wyo.1992), though he does not explain how this case affects his claims. *Cook* holds that punishment for both felony murder and the underlying felony violates double jeopardy. We do not see how this case applies to any issues on appeal. No issues regarding punishment for felony murder and the underlying felony

were raised below, and we decline to address them on appeal. *Farmers Ins. Co. v. Hubbard*, 869 F.2d 565, 570 (10th Cir.1989). We therefore deny Osborn's second motion.

The judgment of the United States District Court for the District of Wyoming is AFFIRMED. Osborn's two motions are DENIED.