**Walter Dean WARING,**
**Plaintiff–Appellee,**

v.

**Paul DELO, Superintendent, Potosi Correctional Center, Missouri Department of Corrections, Defendant–Appellant.**

No. 92–2741.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1993.

Decided Oct. 15, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 22, 1993 *.

---

* Richard S. Arnold, C.J., and McMillian, John R. Gibson and Morris Sheppard Arnold, JJ., would grant the suggestion.

Ronald L. Jurgeson, Kansas City, MO, argued (William L. Webster and Ronald L. Jurgeson, on the brief), for defendant-appellant.

Michael T. Halloran, Kansas City, MO, argued, for plaintiff-appellee.

Before JOHN R. GIBSON, LOKEN, and HANSEN, Circuit Judges.

LOKEN, Circuit Judge.

The State of Missouri appeals a writ of habeas corpus. The district court granted the writ to petitioner Walter Dean Waring on the ground that the ten-year sentence imposed after his conviction for involuntary manslaughter was a vindictive judicial response to his prior withdrawal of a guilty plea. Having concluded that Waring did not receive a vindictive sentence, we reverse.

### I.

In the early morning hours of November 27, 1986, after a long night of drinking, Waring drove his employer's truck through several marking posts and reflectors on a dead-end road near Irwin, Missouri. The truck struck a dirt embankment and overturned, killing one of Waring's two companions. Waring fled the scene but was found face down in a nearby field. He was taken to a hospital for treatment and testing; his blood sample contained .202% alcohol.

### Proceedings in the State Courts.

The State charged Waring with involuntary manslaughter. Two days before trial, he moved to enter a plea of guilty pursuant to a plea agreement requiring the prosecutor to recommend a two-year suspended sentence, sixty days in county jail, and five years supervised probation. At the change of plea hearing, Waring admitted he was guilty of the charge because he had been "drinking and driving a truck and got on the wrong road and wrecked it." Judge L. Thomas Elliston of the Jasper County Circuit Court accepted the guilty plea and ordered a presentence investigation.

The pre-sentence investigation report (PSR) revealed that Waring had two prior felony convictions, a fact not known to his attorney when the plea agreement was negotiated. Two days before sentencing, Waring moved to withdraw his guilty plea on the ground that his employer's accident investigator had reported "a strong possibility that Mr. Waring was not even driving the truck at the time that this incident occurred." At the sentencing hearing, Judge Elliston took up that motion first:

THE COURT: Well, Mr. Lonardo [counsel for Waring]—

MR. LONARDO: Yes, Your Honor?

THE COURT: —is it any issue at all as to guilt or innocence on your motion to withdraw a guilty plea? Is that any issue at all? Am I supposed to determine guilt or innocence in a motion to withdraw a guilty plea?

MR. LONARDO: No, Your Honor.... It's not a question of determining guilt or innocence, it's merely a determination to allow us to prove, us to prove up the case, which we in fact did not believe existed at the time that we entered our guilty plea.

THE COURT: Bull. Am I supposed to let everybody withdraw a guilty plea that two days before sentencing suddenly says there's some phantom witness out there that can see that I'm acquitted of this charge? Isn't that talking about guilt and innocence?

Don't you recall when this man pled guilty?

MR. LONARDO: I certainly do.

THE COURT: What did he have to say about this incident?

MR. LONARDO: You asked him whether or not he was pleading guilty when in fact he, because in fact he was guilty of what he did, and he answered you that he was.

THE COURT: Does he have a constitutional right to plead guilty? No. Does he

have a right to withdraw a plea of guilty [that was] freely, voluntarily, and knowingly made? No.

When does the law say that he should be allowed to withdraw his plea of guilty? When he's been misled or induced to enter it or when it was not freely or knowingly made. Now where does that apply in this case, just because now he says—this twice-convicted felon charged with involuntary manslaughter—now, two days or three days before sentencing, says there's some phantom witness out there that's going to contradict all the other evidence in the case and say that he wasn't driving the vehicle? Now where does that fit within the law to allow him to withdraw his guilty plea?

MR. LONARDO: Because, because to do otherwise would grant a manifest injustice, Judge.

THE COURT: Motion to Withdraw Guilty Plea is overruled.

Turning to the question of sentencing under the plea of guilty, Judge Elliston recited Waring's criminal history as set forth in the PSR—a felony stealing conviction in 1978, eleven traffic convictions between April 1978 and October 1979, one resisting arrest and two DWI convictions in September and October 1980, and a felony robbery conviction in 1982. After Waring confirmed these prior convictions, Judge Elliston stated:

Well, I don't think I need to go any further in this pre-sentence investigation report. I can't imagine any court in the state of Missouri placing you on probation with that traffic record and you're a twice-convicted felon.

Now ... I'm not going to follow the plea bargain at all. So be—and I can't imagine why you haven't been filed upon as a persistent offender. You deserve closer to the maximum of 15 years than ... you do probation.

The manifest injustice would have been to have gone along with this plea bargain and put you, with your driving record, your conviction of a Class A felony, and

your conviction of a Class C felony, on probation, back out there among the public.

I am not following the plea bargain. I will allow you to withdraw your plea bargain. If you don't withdraw your plea bargain ... I will sentence you to five years in the Department of Corrections.

After consulting with his wife and counsel, Waring elected to withdraw his guilty plea and proceed to trial. Judge Elliston increased bail to $50,000 because "if this is filed as a persistent offender, with a Class A felony and a felonious stealing, a jury[1] on involuntary manslaughter will give this man somewhere in between ten and fifteen years, so figuring the ten at 5,000 a year ... I consider the 50,000 to be adequate bail." At the conclusion of the sentencing proceedings, the court commented:

Gentlemen, let me also say something else to the attorneys. Now if this plea bargain form had been filled out properly up here in this heading which says "Prior convictions" to reflect that this man had two prior felonies, we wouldn't have been wasting our time from July until this time. There's no way that I will ever imagine putting anybody on probation for involuntary manslaughter that's been convicted of two prior felonies, especially when one of them's been a Class A felony.

Waring was then tried as a "persistent or dangerous offender," and a jury convicted him of involuntary manslaughter, a Class C felony for which the authorized prison term was "not to exceed fifteen years." Mo.Rev. Stat. § 558.016.3(2) (1979). Seven weeks later, Waring appeared before Judge Elliston for sentencing. The defense urged probation and presented testimony by Waring, his wife, and his employer. During the course of that testimony, Judge Elliston learned that Waring committed the involuntary manslaughter while on probation for his 1982 felony conviction. After hearing this evidence, the court stated:

---

**1.** The reference to a jury determining sentence was mistaken. On the morning of trial, Judge Elliston correctly informed the parties that the court must determine the sentence for a persistent offender. *See* Mo.Rev.Stat. §§ 558.016, 557.036.3(2)(a).

The act was committed while he was on probation, and he was out driving around in this truck in an obviously intoxicated condition. Look at his attitude now. Look at him shake his head and turn the other direction, and you think that's an attitude where he should be placed on probation? He has thumbed his nose at the law and society, in effect, since about 1978.

[M]aybe the system is partly at fault.... [His] Class A felony of robbery, which carries a minimum sentence of ten years, with these check charges[2] and the resisting arrest and some of these other things, and maybe he shouldn't have been given probation.... In any event ... it's about time this individual decided that he's partly responsible for the situation he has himself in. One of the things that won't be in the record is his attitude and appearance as displayed [by] his acts and actions even yet this morning.

\* \* \* \* \* \*

All right, I've made this [docket] entry.... "Court notes that defendant has two prior felonies, two prior DWIs and numerous other convictions. It is the judgment and sentence of the Court that defendant be sentenced to the Department of Corrections for a term of ten years for the crime of involuntary manslaughter."

Waring's conviction was affirmed on direct appeal. He filed a pro se petition for post-conviction relief under Mo.Rule 29.15. The petition included an allegation that Judge Elliston offered a five-year sentence at the plea bargaining stage and then sentenced Waring to ten years after trial "merely to punish the defendant for exercising his right to jury trial," a claim not raised on direct appeal. The state court rejected this claim on the ground that it was abandoned when Waring's appointed counsel failed to include it in an amended Rule 29.15 motion. *State v. Waring*, 779 S.W.2d 736 (Mo.Ct.App.1989). After Waring's state petition was denied, he commenced this federal habeas corpus action.

### Proceedings in the District Court.

Waring's petition alleged that his ten-year sentence unconstitutionally "discourages the Fifth Amendment right not to plead guilty [and] deters the Sixth Amendment right to demand a jury trial." The state responded that this claim was procedurally defaulted in the state courts and, alternatively, is without merit under *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). Based solely upon the state court record, the district court granted the writ.

The district court acknowledged that the claim is procedurally defaulted because it was abandoned during the state postconviction proceedings. However, invoking the fundamental miscarriage of justice exception of *Murray v. Carrier*, 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986), the district court held that "rigid procedural rules must give way to the 'imperative of correcting a fundamentally unjust incarceration,'" quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1981).

Turning to the merits, the district court held that, "When a harsher sentence is given to a defendant following a breakdown in plea negotiations, 'the record must show that no improper weight was given the failure to plead guilty.' *[United States v.] Carter*, 804 F.2d [508,] 514 [9th Cir.1986]." The court then found (i) that Judge Elliston became angry when Waring moved to withdraw his guilty plea two days before the first sentencing; (ii) that Judge Elliston refused to follow the plea agreement, threatened Waring with a five-year sentence if he pleaded guilty, and threatened that a jury would sentence him to ten to fifteen years after trial "out of anger at petitioner's assertion of his right to trial by jury"; and (iii) that the judge's improper anger motivated the ten-year sentence he imposed after trial. Therefore, Waring was the victim of unconstitutional vindictiveness on the part of the sentencing judge. The district court ordered that Waring be re-

---

2. While testifying at trial, Waring had admitted three prior convictions not reflected in the PSR, a 1981 misdemeanor conviction for passing bad checks, a 1982 misdemeanor conviction for driving with a revoked license, and a 1986 misdemeanor conviction for passing bad checks.

leased or be "resentenced to a period of imprisonment not exceeding five years."

The State moved for reconsideration, pointing out that the district court's legal standard, based upon a 1986 Ninth Circuit opinion, was inconsistent with the Supreme Court's subsequent holding in *Alabama v. Smith* that no presumption of vindictiveness exists, and only proof of actual vindictiveness will suffice, "when a greater penalty is imposed after trial than was imposed after a prior guilty plea." 490 U.S. at 801, 109 S.Ct. at 2205. The district court denied this motion on the ground that Judge Elliston's "anger supports a finding of actual vindictiveness."

On appeal, the State argues that the district court erred in applying the "actual innocence" exception to procedural bar, in concluding that Waring had received an unconstitutional vindictive sentence, and in placing a five-year limit on the State's resentencing authority. Because we conclude that the writ was improvidently granted, we do not consider the question of remedy.

## II.

Following the district court's initial decision in this case, the Supreme Court decided *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). *Sawyer* confirmed that the "miscarriage of justice" exception to procedural default is limited to petitioners who can show "a colorable claim of factual innocence." —— U.S. at ——, 112 S.Ct. at 2519. *Sawyer* held that, in death penalty cases, petitioner must "show by clear and convincing evidence that but for constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty." —— U.S. at ——, 112 S.Ct. at 2525. The State contends that *Sawyer* applies to sentencing claims in noncapital cases, that Waring was "eligible" for the ten-year sentence he received because it was within the statutory maximum, and therefore that his procedural default of this sentencing claim may not be excused under the actual innocence exception.

Though we have applied *Sawyer* to guilt issues in a noncapital case, *see Cornell v.*

*Nix,* 976 F.2d 376, 381 (8th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1820, 123 L.Ed.2d 450 (1993), the State's attempt to apply *Sawyer*'s standard to a noncapital sentencing claim raises perplexing questions. Prior to *Sawyer,* this court invoked the miscarriage of justice/actual innocence exception to procedurally defaulted noncapital sentencing issues such as whether petitioner was sentenced under a statute that did not apply to him, *see Jones v. Arkansas,* 929 F.2d 375, 380–81 (8th Cir.1991), and whether petitioner was not the proper subject of a life sentence, *see Pilchak v. Camper,* 935 F.2d 145, 148 (8th Cir.1991). We relied upon Supreme Court statements that the exception was directed toward "the imperative of [correcting] a fundamentally unjust incarceration," *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1981), and included "any substantial claim that the alleged error undermined the accuracy of the guilt *or sentencing determination,*" *Smith v. Murray,* 477 U.S. 527, 539, 106 S.Ct. 2661, 2268, 91 L.Ed.2d 434 (1986) (emphasis added). *Sawyer* cited *Engle* and *Smith* favorably, *see* —— U.S. at ——, 112 S.Ct. at 2518–19, which suggests that *Jones* and *Pilchak* have not been overruled. At least one other circuit seems to agree. *See Mills v. Jordan,* 979 F.2d 1273, 1278–79 (7th Cir.1992).

On the other hand, the majority in *Sawyer* commented that, "In the context of a noncapital case, the concept of 'actual innocence' is easy to grasp," —— U.S. at ——, 112 S.Ct. at 2520, and gave the example of another person confessing to the crime. This suggests that there may be no exception for procedurally barred noncapital sentencing claims, unless one is innocent of the crime. At a minimum, this and other passages in *Sawyer* admonish that the actual innocence exception in a noncapital sentencing case must be defined by a narrow, objective standard, such as the State's proposal that one cannot be actually innocent of any sentence that is within the statutory maximum. *Accord, Smith v. Collins,* 977 F.2d 951, 958–59 & n. 5 (5th Cir.1993). In other words, as a panel of this court recently observed, "It is not clear to us that *Jones [v. Arkansas]* is still good law in the context of a noncapital

case." *Higgins v. Smith,* 991 F.2d 440, 441 (8th Cir.1993). Therefore, although procedural default is normally a threshold issue, we turn to the merits of Waring's vindictive sentencing claim.

## III.

■ A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal. When the same judge imposes a greater sentence after the defendant successfully appealed the first conviction, a presumption arises that the sentence is, in this sense, vindictive. *See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). However, in *Alabama v. Smith,* 490 U.S. at 794, 109 S.Ct. at 2201, the Supreme Court held "that no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial." Therefore, as the district court belatedly acknowledged, Waring bears the burden of proving that actual judicial vindictiveness motivated the ten-year sentence he received after trial. *See Wasman v. United States,* 468 U.S. 559, 567–68, 104 S.Ct. 3217, 3222–23, 82 L.Ed.2d 424 (1984).

■ The decision in *Smith* was based on the fact that the sentencing judge has considerably more relevant sentencing information after trial than was available when the defendant pleaded guilty. During a trial, "the judge may gather a fuller appreciation of the nature and extent of the crimes charged" and gain "insights into [the defendant's] moral character and suitability for rehabilitation." In addition, "after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present." 490

U.S. at 801, 109 S.Ct. at 2206. Therefore, it is not reasonable to presume that a longer sentence imposed after trial was motivated by unconstitutional vindictiveness.

All of these factors were present in this case. During and after the trial, Judge Elliston learned of additional crimes Waring had committed. *See* note 2, *supra.* He learned that Waring committed the instant offense while on parole for the 1982 felony. *See Mele v. Fitchburg Dist. Court,* 884 F.2d 5, 10 (1st Cir.1989) (breach of parole justifies harsher resentencing). He had the benefit of the state's trial evidence, which included testimony by Waring's surviving passenger and the passerby who observed Waring flee the scene. *See Osborn v. Shillinger,* 997 F.2d 1324, 1329 (10th Cir.1993). The judge had also gained additional insight into Waring's character.[3] Judge Elliston expressly noted at sentencing that Waring's conduct indicated a refusal to accept responsibility for the crime and the absence of a rehabilitative frame of mind.

■ The district court nonetheless concluded that Judge Elliston's anger at the first sentencing hearing was adequate proof of actual vindictiveness. For a number of reasons, we cannot agree.[4]

In the first place, the transcript of the first sentencing hearing does not support the conclusion that Judge Elliston became angry at Waring for moving to withdraw his plea of guilty. We have quoted the most relevant portions earlier in this opinion. The closest the judge came to expressing anger was when he labeled attorney Lonardo's argument in support of the motion "bull." The judge's use of an insulting vernacular in open court was unfortunate. But we do not believe it expressed anger so much as judicial incredulity at counsel's argument that War-

---

**3.** Mindful of Waring's plea hearing admission that he drove the truck, when Judge Elliston heard defense counsel's opening statement that Waring would take the stand and deny that, the court suggested to defense counsel out of the jury's hearing that he "advise your client as to what the crime of perjury is." Waring then testified that he did not know whether he was driving the truck when it crashed. A sentencing judge is permitted to consider his belief that the defendant has committed perjury. *United States v. Grayson,* 438 U.S. 41, 53, 98 S.Ct. 2610, 2617,

57 L.Ed.2d 582 (1978); *Hess v. United States,* 496 F.2d 936, 939 (8th Cir.1974).

**4.** The Supreme Court's opinions in this area persuade us that actual vindictiveness is an issue we must review de novo, giving little deference to the district court's interpretation of the cold state court record. *See United States v. McKines,* 933 F.2d 1412, 1424–26 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).

ing should be allowed to withdraw his plea on the eve of sentencing because there *might* be a witness who would say he was not driving the truck when it crashed, after Waring had *admitted* driving the truck at the plea hearing.

■ There was certainly good cause for incredulity. As Lonardo's testimony at the state postconviction hearing made clear, when the PSR revealed the prior felony convictions his client had failed to disclose, Lonardo knew that Judge Elliston would likely reject the plea agreement and that Waring's plea hearing admission would make defense of the charge at trial very difficult. The motion to withdraw was no doubt a desperate attempt to escape this dilemma. Though we do not approve Judge Elliston's pungency, we cannot make a finding of unconstitutional vindictiveness because he accurately characterized the weakness of that motion. *See S.E.C. v. Bartlett,* 422 F.2d 475, 481 (8th Cir.1970) ("A record which reflects an appropriate ground for a trial court's observations refutes any claim of personal bias"). And as Judge Posner said in another context, "mild judicial intemperateness does not suspend the operation of the substantial-evidence rule." *Pearce v. Sullivan,* 871 F.2d 61, 64 (7th Cir.1989). Neither does it overcome the presumption of judicial impartiality. *See United States v. Walker,* 920 F.2d 513, 517 (8th Cir.1990) ("a few improper comments do not merit reversal"); *Smith v. Honeywell, Inc.,* 735 F.2d 1067, 1070 (8th Cir.), *cert. denied,* 469 U.S. 1077, 105 S.Ct. 576, 83 L.Ed.2d 516 (1984); *Davis v. Commissioner,* 734 F.2d 1302 (8th Cir.1984) ("Oh, come on" not a biased or improper judicial remark).

Second, even if Judge Elliston was angry, we infer from the record that he was angry at the attorneys for failing to disclose Waring's prior felonies before the plea hearing, not at Waring for moving to withdraw the plea. Before the plea hearing began, Judge Elliston had reviewed the PSR and knew he would reject the plea agreement and then offer Waring a chance to withdraw his plea. This made Waring's motion to withdraw little more than a formality from the court's standpoint. As the court's closing remarks made clear, he was annoyed at the attorneys for

failing to disclose facts that would have caused him to reject the plea agreement two months earlier. That was primarily a blunder by the prosecutor; it is not a basis for inferring prejudice against Waring.

Third, to find that a sentence is vindictive, it must be greater than a "baseline" sentence. *See United States v. Jones,* 997 F.2d 1475, 1478 (D.C.Cir.1993) (en banc). At the first sentencing, Judge Elliston told Waring he would receive a five-year sentence if he pleaded guilty and predicted that a jury would impose a ten- to fifteen-year sentence after trial. Which is the baseline? If the court had not told Waring what sentence he would receive on his plea of guilty, Waring could not have intelligently decided whether to accept the court's offer to let him withdraw the plea. Does that sentence then become a baseline that the judge may not exceed after a trial without triggering a finding of vindictiveness? We think not. Such a rule would infringe the line of Supreme Court cases that "unequivocally recognize the constitutional propriety of extending leniency in exchange for a plea of guilty and of not extending leniency to those who have not demonstrated those attributes on which leniency is based." *Corbitt v. New Jersey,* 439 U.S. 212, 224, 99 S.Ct. 492, 500, 58 L.Ed.2d 466 (1978). The appropriate baseline in this case was the predicted ten- to fifteen-year sentence after trial. Therefore, the ten-year sentence actually imposed was not vindictive.

Finally, we reject the district court's conclusion that Judge Elliston's anger at the first sentencing hearing motivated the ten-year sentence he imposed many months later. There were simply too many supervening events to permit this finding as to causation—Waring accepting the court's subsequent invitation to withdraw his plea; the court making the persistent offender finding prior to trial and concluding that it, rather than the jury, must determine Waring's sentence; and the many facts relevant to sentencing that Judge Elliston learned during the trial and the second evidentiary sentencing hearing. Given the presumption of judicial impartiality, we will not assume that a judicial officer's action was based upon an unconstitutional grudge, rather than the

proper legal basis that he stated on the record at the time the action was taken. *See Texas v. McCullough,* 475 U.S. 134, 139, 106 S.Ct. 976, 979, 89 L.Ed.2d 104 (1986); *United States v. Templeman,* 965 F.2d 617, 620 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992); *Harris v. Missouri,* 960 F.2d 738, 740 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 339, 121 L.Ed.2d 256 (1992); *Johnson v. Vose,* 927 F.2d 10, 13–14 (1st Cir.1991); *Taylor v. Kincheloe,* 920 F.2d 599, 608 (9th Cir.1990).

For all the foregoing reasons, we conclude that Waring's ten-year sentence was not the product of unconstitutional judicial vindictiveness. The district court rejected Waring's other contentions on the merits, and he has not cross appealed. Therefore, the judgment of the district court is reversed and the case is remanded with instructions to enter judgment dismissing the petition for a writ of habeas corpus.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent.

I would affirm the judgment of the district court granting the writ of habeas corpus ordering release, unless Waring is sentenced to a period of imprisonment not exceeding five years.

The district court painstakingly reviewed the state trial record before us. That record demonstrates that Waring entered a guilty plea under an agreement providing that he would receive a sentence of two years for involuntary manslaughter, that execution of the sentence would be suspended, that he would serve sixty days in jail and be placed on five years supervised probation. When Waring appeared and attempted to withdraw his guilty plea, the trial court refused to follow the plea agreement because the presentence investigation report, which was completed after Waring entered his plea, reflected that Waring had a criminal record. The judge told Waring he could withdraw his plea, and said if he did not do so, "I will assure you that my disposition of this will be much worse than probation because I will sentence you to five years." The trial judge also told Waring that if he withdrew his plea,

"we are going to have a speedy trial, very quickly."

The district court referred to the facts above, and further stressed the following additional factors: (1) the trial judge knew that Waring was a twice-convicted felon before questioning Waring when he requested the withdrawal of his plea; (2) the trial judge threatened to increase Waring's sentence out of anger because Waring asserted his constitutional right to trial by jury; and (3) the trial judge further threatened Waring by predicting that a jury would sentence him to ten or fifteen years. After Waring was found guilty at trial, the judge sentenced him to ten years in prison.

I cannot conclude that the district court erred in finding that these bare facts demonstrated vindictiveness, and that the trial judge penalized Waring for asserting his right to trial. I am convinced that the trial judge's clear statement to Waring before trial that he would be sentenced to five years established a baseline sentence. The ten-year sentence the judge ultimately imposed was harsher than this baseline.

For these reasons, and on the basis of the carefully articulated opinion of the district court, I would affirm the granting of the writ.