# Illinois Official Reports

## Appellate Court

---

### *O'Rourke v. McIlvaine*, 2014 IL App (2d) 131191

---

| | |
|---|---|
| Appellate Court Caption | ROSEMARY O'ROURKE, Plaintiff-Appellant, v. BRUCE McILVAINE and McILVAINE ENTERPRISES, INC., Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-13-1191 |
| Filed | September 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for negligent hiring and retention alleging that a man who worked for defendants' residential construction firm in the course of completing an insulation job at plaintiff's house broke into her house a few weeks after the job, restrained her and stole some items from the house, the appellate court upheld the trial court's entry of summary judgment for defendants based on section 317 of the Restatement (Second) of Torts, since defendants' work relationship with the man ended several weeks before the home invasion, plaintiff's home could no longer be considered defendants' jobsite for purposes of her claim for negligent hiring and retention, plaintiff did not allege the man used any of defendants' instrumentalities in the home invasion, defendants did not have any right to control the man when he invaded plaintiff's home, and there was no allegation of a failure to warn plaintiff of the man's criminal record. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-L-906; the Hon. Diane E. Winter, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Donald J. Morrison, of Morrison & Morrison, P.C., of Waukegan, for appellant.

Bradley E. Puklin and Robert K. Scott, both of Scott, Halsted & Babetch, P.C., of Chicago, for appellees.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1       The trial court granted summary judgment against plaintiff, Rosemary O'Rourke, on her negligence complaint against defendants, Bruce McIlvaine and McIlvaine Enterprises, Inc. Plaintiff's complaint sought to hold defendants accountable for a home invasion committed against her by Alejandro Requena, who had previously worked under defendants' supervision on an insulation project inside plaintiff's home. The trial court reasoned that defendants could not be held responsible for the crime, because the work relationship between defendants and Requena had ended several weeks before and thus plaintiff's home could no longer be considered defendants' jobsite. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3       In November 2011, plaintiff filed her complaint for negligent hiring and retention. As later brought out in summary-judgment proceedings, the uncontested facts of this case are as follows. In 2010, defendant Bruce McIlvaine (Bruce) was president of defendant McIlvaine Enterprises (McIlvaine), a residential construction firm. Plaintiff hired McIlvaine to replace insulation in the attic of her home in Bannockburn, where she lived alone. On January 12, 2010, Bruce began the insulation project, accompanied by an independent contractor he frequently retained to assist him with projects. On the first day of the job, Bruce realized that he needed additional help to finish the project within the agreed time frame. Bruce consulted an associate, who recommended a laborer named Santiago Waight. Bruce contacted Waight and asked if he could assist with the insulation project and if he could find others to help as well. Waight agreed to help and said that he would bring two others. The next day, January 13, Waight arrived at plaintiff's home with two men, Requena and Alan Romero. McIlvaine did not inquire into Requena's background. In fact, Requena had criminal convictions for unlawful possession of a motor vehicle and for theft from, and abuse of, an elderly person. McIlvaine permitted Waight, Romero, and Requena to work on the project, which they completed the next day.

¶ 4    On March 9, 2010, a man rang plaintiff's doorbell. Plaintiff did not recognize the man and addressed him through a second-story window. The man said that he was there to clean the furnace. Plaintiff said that he had the wrong house, and then she phoned the police. Later that day, plaintiff heard a noise inside her house. She stepped out of her bedroom to see a man whom she later identified as Requena. She had not invited Requena into her home. The record suggests that he broke into the house through an outside door. Requena restrained plaintiff, beat her, and stole items from the house.

¶ 5    Plaintiff's complaint alleged that defendants were negligent for failing to investigate Requena's background before allowing him into plaintiff's home. Plaintiff asserted that defendants' negligence permitted Requena to learn "intimate details" about plaintiff and her home and so was the proximate cause of plaintiff's injury.

¶ 6    In January 2012, defendants filed a motion for judgment on the pleadings (see 735 ILCS 5/2-615 (West 2012)). Defendants contended that, as a matter of law, they had no responsibility for Requena's actions occurring two months after their work relationship with him was terminated. The motion was heard by the Honorable David M. Hall, who entered a written order in April 2012 denying the motion "for the reasons stated in the record." The record, however, contains no transcript of the motion hearing or other indication of Judge Hall's reasoning.

¶ 7    In April 2013, defendants filed a motion for summary judgment (see 735 ILCS 5/2-1005 (West 2012)). Defendants again contended that, as a matter of law, they had no duty to plaintiff when the home invasion occurred. In response, plaintiff asserted that Judge Hall's denial of defendants' motion for judgment on the pleadings was the law of the case and, accordingly, required denial of the motion for summary judgment. Alternatively, plaintiff addressed the merits, contending that there was an issue of material fact as to whether defendants were negligent. In arguing that defendants had a duty of care toward her, plaintiff commented that "[t]he rule of law regarding employee liability for criminal acts of employees originates from the Restatement (Second) of Torts § 317 (1965)." Plaintiff contended that the requisites of section 317 for the existence of a duty of care were satisfied in this case.

¶ 8    The summary-judgment motion was heard by the Honorable Diane E. Winter. Judge Winter concluded that she was not bound by Judge Hall's denial of defendants' motion for judgment on the pleadings, as facts had developed since that ruling. Reaching the merits of the summary-judgment motion, Judge Winter applied the principles of section 317 of the Restatement (Second) of Torts, as summarized by the First District Appellate Court in *Escobar v. Madsen Construction Co.*, 226 Ill. App. 3d 92, 95 (1992):

> "[A]n employer may be liable for harm caused by an employee acting outside the scope of his employment if the employee is on the employer's premises or using chattel of the employer, and the employer has reason to know of the need and opportunity for exercising control over the employee."

¶ 9    Judge Winter found that plaintiff's home could not be considered defendants' premises, or jobsite, once the work relationship between Requena and defendants had ended. Judge Winter also found that Requena was not using any chattel or instrumentality of defendants' when he committed the home invasion. Consequently, Judge Winter held that, as a matter of law, defendants were not responsible for Requena's actions.

¶ 10    Plaintiff filed this timely appeal.

## II. ANALYSIS

¶ 12　The purpose of a summary-judgment proceeding is not to adjudicate a question of fact but, rather, to determine whether an issue of fact exists that would preclude judgment as a matter of law. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). Our review of summary-judgment rulings is *de novo*. *Adams*, 211 Ill. 2d at 43.

¶ 13　"To prevail in an action for negligence, the plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach." *Id.* The existence of a duty is a question of law for the court to decide. *Id.* Where a defendant owes no duty, he cannot be found negligent. *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999).

¶ 14　The parties frame the issue on appeal as whether an employer may be held liable for the posttermination wrongful acts of an employee. Judge Winter did not determine whether Requena was defendants' employee, or rather an independent contractor, in performing the insulation work at plaintiff's home. She found the distinction immaterial to her analysis. The parties assume for purposes of this appeal that Requena was defendants' employee, though defendants stress that they are not thereby conceding that fact.

¶ 15　Plaintiff's initial contention is that Judge Winter misapplied the law-of-the-case doctrine by refusing to defer to Judge Hall's denial of defendants' motion for judgment on the pleadings. We disagree. "The law-of-the-case doctrine binds a court only where a court's prior order was final." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 368 Ill. App. 3d 734, 742-43 (2006) (appellate court's denial of motion to dismiss appeal for lack of jurisdiction was interlocutory and, therefore, not subject to the law-of-the-case doctrine). The denial of a motion for judgment on the pleadings is interlocutory, or nonfinal. *Fabian v. Norman*, 138 Ill. App. 3d 507, 509 (1985). Consequently, Judge Hall's decision did not bind Judge Winter.

¶ 16　Moving to the merits, we note that the issue of whether an employer is liable for the posttermination torts of an employee was raised before this court quite recently in *Doe v. Boy Scouts of America*, 2014 IL App (2d) 130121. In *Doe*, the defendants were sued in negligence for a sexual assault that their employee committed several months after his employment was terminated. The plaintiff urged this court to find that an employer's duty of care can extend to its employee's posttermination acts. The issue was apparently one of first impression in Illinois, but we declined to decide it where the plaintiff failed to develop it properly:

> "Plaintiff has cited no authority, Illinois or otherwise, for holding an employer liable, under the tort of negligent hiring and retention, for an employee's posttermination acts. Our own research has disclosed no Illinois decision where a negligent-hiring-and-retention claim was based on posttermination acts. Our cursory research outside Illinois shows that the issue is controversial enough to have generated a split of authority. Compare *Abrams v. Worthington*, 169 Ohio App. 3d 94, 2006-Ohio-5516, 861 N.E.2d 920, at ¶ 16 (no liability, because employment relationship had terminated before the wrongful act occurred), with *Marquay v. Eno*, 662 A.2d 272, 280 (N.H. 1995) ('The requirement of causal connection to

employment does not mean, however, that the employee's criminal conduct must have been performed within the scope of employment, during working hours, or even while the perpetrator was an employee.'). Without considering the issue deeply, we can appreciate why courts would deem the termination of employment a logical and practical boundary for employer liability. Plaintiff suggests that 'public policy *** dictates' that 'liability should extend beyond the temporal bounds of the employment relationship.' We think it unadvisable to weigh the wisdom of such a policy where plaintiff marshals not even one source of authority to her cause and fails to recognize the controversy in other jurisdictions." *Id.* ¶ 41.

¶ 17     We did, however, express our skepticism of the plaintiff's position:

"Though we decline to make a definitive statement today, we note that the law of negligent hiring and retention in this state appears to afford little scope for liability for posttermination acts of employees. We consider first the following representative statement of the tort: 'Liability for negligent hiring arises only when a particular unfitness of an applicant creates a danger of harm to a third person which the employer knew, or should have known, when he hired and placed this applicant *in employment where he could injure others*.' (Emphasis added.) *Fallon v. Indian Trail School, Addison Township School District No. 4*, 148 Ill. App. 3d 931, 935 (1986). This language suggests that the purpose of the tort is to prevent injuries that occur during the term of employment and, consequently, suggests that the employer's duty of care does not extend beyond the cessation of employment.

Significant also is the rigorous standard of proximate causation applied in negligent-hiring-and-retention cases. Illinois courts require that the *injury itself* must have 'occurred by virtue of the servant's employment (*i.e.*, "because of the employment").' (Internal quotation marks omitted.) *Carter v. Skokie Detective Agency, Ltd.*, 256 Ill. App. 3d 77, 80 (1993). Though Illinois courts are careful to maintain that an employer may be liable 'even though the employee commits the criminal or intentional act outside the scope of employment' (internal quotation marks omitted) (*id.*), liability for out-of-the-scope acts will rest only where 'the employee is on the employer's premises or using the chattel of the employer, and the employer has reason to know of the need and opportunity for exercising control over the employee' (*MacDonald v. Hinton*, 361 Ill. App. 3d 378, 387 (2005)). *MacDonald* relied on *Escobar v. Madsen Construction Co.*, 226 Ill. App. 3d 92, 95 (1992), which in turn relied on the Restatement (Second) of Torts, section 317 (1965). Courts have applied this rule to find liability lacking as a matter of law where, though the plaintiff came to know the employee only through the employment, the injury neither occurred on the employer's premises nor involved the instrumentalities of employment. See *MacDonald*, 361 Ill. App. 3d at 388 ('Plaintiff alleged that Maust killed James outside the scope of their employment at Trophies Are Us, but failed to allege that Maust killed James on defendant's premises or with the instrumentalities of the employment.'); *Escobar*, 226 Ill. App. 3d at 95 (when the employee shot his coworker, the shooter 'was not on [the employer's] jobsite, not doing [the employer's] work, and not using [the employer's] gun'). In such a case, the employment only 'provided a condition for [the] attack' (by introducing the employee to the victim) and did not 'proximately cause[ ]' it. *Escobar*, 226 Ill. App. 3d at 95.

We do not opine on the wisdom of this approach, but note only that the policy exists and presents a formidable obstacle that plaintiff does not begin to address. Under this strict concept of causation, if the injury occurs–as here–after the actor's employment has ended, then *a fortiori* the injury cannot be connected to that employment." (Emphasis in original.) *Id.* ¶¶ 42-43.

¶ 18    Thus, in *Doe*, we observed–without rendering a holding on the matter–that Illinois courts have regarded section 317 as placing a significant restriction on an employer's liability for the acts of an employee that exceed the scope of the employment. We further commented that section 317 appears to assume that the employment relationship was ongoing when the acts occurred on which liability is claimed. Now again we are asked to consider the possibility of liability under Illinois law for the posttermination acts of an employee. We stress, however, that plaintiff posits no ground for such liability apart from section 317. Plaintiff's briefs do, we note, cite several foreign decisions that find liability for posttermination acts, and some of these courts rely on such sources as section 302B of the Restatement (Second) of Torts (1965), which states: "An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." See, *e.g.*, *McGuire v. Arizona Protection Agency*, 609 P.2d 1080, 1081-82 (Ariz. Ct. App. 1980) (applying section 302B to the acts of an ex-employee). Nevertheless, plaintiff's briefs assume that, in Illinois, no liability for beyond-the-scope acts of an employee rests apart from section 317. Moreover, at oral argument, counsel for plaintiff was asked directly whether he was claiming any authority but section 317, and he unequivocally denied that any other source governed here.

¶ 19    Our analysis begins with the rule that one has no duty to protect another from the wrongful actions of a third party. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 19; *MacDonald v. Hinton*, 361 Ill. App. 3d 378, 382 (2005). One exception to this rule is where a special relationship exists. The relationship may be between the injured party and the party alleged to owe the duty, *e.g.*, " 'common carrier and passenger, innkeeper and guest, custodian and ward, and possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation.' " *Simpkins*, 2012 IL 110662, ¶ 20 (quoting *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 438 (2006)). Alternatively, the relationship may exist between the party who is the source of the harm and the party alleged to owe the duty, "such as a parent-child relationship [citations] and a master-servant or employer-employee relationship [citations]." *Id.*

¶ 20    Section 317 has been adopted by our supreme court (see *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 229 (2000)), and it states:

"§ 317. Duty of Master to Control Conduct of Servant

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

- 6 -

        (ii) is using a chattel of the master, and

   (b) the master

      (i) knows or has reason to know that he has the ability to control his servant, and

      (ii) knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts § 317 (1965).

¶ 21      Illinois courts have condensed section 317 as follows:

"[A]n employer may be liable for harm caused by an employee acting outside the scope of his employment if the employee is on the employer's premises or using chattel of the employer, and the employer has reason to know of the need and opportunity for exercising control over the employee." *Escobar*, 226 Ill. App. 3d at 95.

¶ 22      The trial court determined that Requena committed the harm neither on defendants' premises nor with defendants' instrumentalities. As *Escobar* recognizes, an employer's jobsite may be considered its premises for purposes of this rule. See *id.* Plaintiff does not contend that Requena used defendants' instrumentalities, but does assert that plaintiff's home was still defendants' jobsite when Requena broke in and injured her. Plaintiff urges us to define premises "geographically, rather than temporally." According to plaintiff, "[t]here simply is no authority to suggest that a site ceases to be a 'jobsite' when the job is complete." Plaintiff, however, has the burden of persuasion on appeal, and she cites no authority to suggest that an area *does* remain the employer's jobsite for purposes of section 317 once the job is complete. Certainly, the notion is not self-evidently true, and it would seem to raise many questions, such as how to assign responsibility for hazards that might remain on the jobsite. Plaintiff also suggests no limit on how long an area must or can be deemed an employer's jobsite once the job is complete. The fiction that plaintiff proposes certainly would benefit her in this case, but she evidently has given little thought to its ramifications. Therefore, we find no error in the trial court's determination that plaintiff's home was not a jobsite when Requena broke in and injured her.

¶ 23      Even if we accepted the curious notion that plaintiff's home was still defendants' jobsite when the home invasion occurred, plaintiff's claim would still fail as a matter of law because defendants no longer had a right of control over Requena when he committed the crime. The right of control has long been the dominant element that defines an employment relationship. See *Darner v. Colby*, 375 Ill. 558, 561 (1941) ("The right to control the manner of doing the work is of principal importance in the consideration of the question whether the worker is an employee or an independent contractor."); *Landers-Scelfo v. Corporate Office Systems, Inc.*, 356 Ill. App. 3d 1060, 1069-70 (2005) ("Under the common law, the most important factor in deciding whether a putative employer is a common-law employer is whether it has the right to control the manner and method in which the work is to be carried out.").

¶ 24      Indeed, the employer's right to control the employee's conduct is essential for liability under the doctrine of *respondeat superior*, according to which an employer is responsible for the acts of an employee committed within the scope of employment. See *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 18 (*respondeat superior* liability "requires a showing that (1) a principal/agent, master/servant, or employer/employee relationship existed; (2) the principal controlled or had the right to control the conduct of the alleged employee or agent; and (3)

the alleged conduct of the agent or employee fell within the scope of the agency or employment"); *Harding v. St. Louis National Stockyards*, 242 Ill. 444, 450 (1909) ("The doctrine of *respondeat superior* is applicable where the person sought to be charged has the right to control the action of the person committing the injury.").

¶ 25    Moreover, the doctrine of *respondeat superior* requires that the right to control exist contemporaneously with the injury on which the employer's liability is premised. The principles are well established:

> "The general rule is that a person[ ] who is injured by the negligence of another individual[ ] must seek his remedy for damages against the person who caused the injury. However, the doctrine of *[r]espondeat superior* is an exception to this rule of law. Under this exception, the negligence of the employee is imputable to the employer, if the relationship of principal[-]agent *existed at the time of and in respect to the transaction out of which the specific injury arose*. [Citation.]

> However, it is of little consequence that the negligent employee was usually the agent of his employer if, at the time of his tortious conduct toward the third party, the relationship of principal-agent was temporarily discontinued. If he was not acting as his employer's agent at the time of the tort, the employer cannot be held liable for his negligent act. It is the burden of the plaintiff, who asserts this agency, to show that the employee was acting as the agent of the defendant-employer when the injury was inflicted. [Citation.]

> In order to meet this burden the plaintiff must show not only that the tortfeasor was an employee, but that the relationship of principal and agent was not suspended at the time of the injury and that this relationship existed with respect to the particular transaction from which the tort arose. [Citations.] If the plaintiff is unable to sustain each of these factors, the question of agency need not be submitted to the jury." (Emphasis added.) *Bolwin v. El Kay Manufacturing Co.*, 32 Ill. App. 3d 138, 140-41 (1975).

See also *Mosley v. Northwestern Steel & Wire Co.*, 76 Ill. App. 3d 710, 718 (1979) ("[I]f the employee was not acting as the employer's agent at the time of the injury, the employer cannot be held liable for the employee's acts.").

¶ 26    The "borrowed employee" cases in Illinois highlight that accountability for an employee's wrong rests with the employer who was then in control of the employee with respect to the particular task that the employee was performing when he committed the wrong. For instance, in *Haight v. Aldridge Electric Co.*, 215 Ill. App. 3d 353, 366 (1991), a worker who was employed by Ald-Cass Electric, Inc., for several years was "contracted" out to another firm, Aldridge Electric Company, Inc., on a temporary basis. When Ald-Cass "contracted" out an employee to Aldridge, the understanding was that the employee was under Aldridge's direction and did not answer to Ald-Cass for the work performed during the assignment. Several days into the Aldridge assignment, the worker negligently caused a car accident while driving an Aldridge vehicle and conducting Aldridge business. *Id.* at 366-67. This court affirmed the jury verdict holding Aldridge, not Ald-Cass, liable for the worker's negligent act, as Aldridge was functionally the worker's employer at the time of the injury. *Id.*

¶ 27    Thus, *respondeat superior* liability requires, at a minimum, that the employer had the right to control the employee when the injury occurred. The same minimal requirement of a

right to control exists in cases where the employee's action falls *outside* the scope of employment. An express element of liability under section 317 is that the employer failed to exercise control over the employee. Plaintiff would have us hold in this case that defendants' breach was complete when they hired Requena and retained him long enough for him to work at plaintiff's home and become acquainted with her living situation. That approach is foreclosed by the text of section 317 and its comments. The text grounds liability on an employer's failure "to control [the] servant *while acting* outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them." (Emphasis added.) Restatement (Second) of Torts § 317 (1965). A failure of control implies the capacity and authority *to* control, and "scope of employment" implies an existing employment relationship. The text contemplates an injurious act that, though committed outside the scope of employment, is still committed *during* the employment, that is, while the employee is subject to the employer's control. When Requena worked on plaintiff's home, he acted within the scope of his employment while under defendants' control. When Requena committed the act for which plaintiff claims defendants are accountable, defendants no longer had the right to control his conduct.

¶ 28 Comment *c* reinforces the plain meaning of the text:

> "*c. Retention in employment of servants known to misconduct themselves.* There may be circumstances in which the only effective control which the master can exercise over the conduct of his servant is to discharge the servant. Therefore the master may subject himself to liability under the rule stated in this Section by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others. This is true although he has without success made every other effort to prevent their misconduct by the exercise of his authority as master. Thus a railroad company which knows that the crews of its coal trains are in the habit of throwing coal from the cars as they pass along tracks laid through a city street, to the danger of travelers, is subject to liability if it retains the delinquents in its employment, although it has promulgated rules strictly forbidding such practices." Restatement (Second) of Torts § 317 cmt. c (1965).

¶ 29 The clear message here is that, failing all lesser attempts to control an errant employee, the employer must exert the ultimate control, which is to fire the employee. The implied lesson is that the employer fulfills its duty of care by terminating the employee before he can harm others in connection with the employment (*i.e.*, while on the employer's premises or while using the employer's instrumentalities). The lesson of comment *c*'s hypothetical is that, if the railroad company fired the delinquent employees, it would not be responsible if they returned afterward, stole onto a railway car, and flung more coal. In the same way, defendants are not liable for Requena's postemployment decision to injure plaintiff.

¶ 30 Moreover, there is no principled basis for holding that an employer's right of control must be contemporaneous with the within-the-scope act that is the alleged basis of *respondeat superior* liability–which Illinois case law clearly requires–while holding that an out-of-the-scope act need not stem from a contemporaneous failure to control.

¶ 31 We conclude, therefore, that section 317 presumes that the actor committed the wrongful act while still employed and, hence, while the employer still had the right of control. See

*San Benito Bank & Trust Co. v. Landair Travels*, 31 S.W.3d 312, 319 (Tex. App. 2000) (rejecting the possibility of employer liability for the posttermination acts of employee, noting that under section 317 "control is the critical factor"). Here, since the employment relationship had ended, defendants had no authority, and therefore no duty, to control Requena when he injured plaintiff. As the undisputed facts show that defendants had no duty of care toward plaintiff when the injury occurred, plaintiff's negligence action fails as a matter of law.

¶ 32     Without commenting on the potential merits of such a claim, we note that plaintiff's cause of action is not based on any alleged failure by defendants to warn plaintiff of Requena's criminal background.

¶ 33                                    III. CONCLUSION

¶ 34     For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 35     Affirmed.